It is my pleasure to move the admission of Daniel J. Kline to the Bar of the Court of Appeals for the Federal Circuit. Mr. Kline is a member of the Bar in good standing of the highest court of the State of New York. I have knowledge of his credentials. I am satisfied that he possesses the necessary qualifications. Mr. Kline has been my law clerk for some time, and I have personally observed his qualities of diligence and competence. So if you will proceed to the clerk, he will administer the case. I think the rest of the panel gets to debate on this. I was trying to force it all back. Judge Newman is conflicted on this issue. Do you agree that we should allow his admission? If Judge Newman says it's good enough for me. Shall we take a vote that we have unanimously granted our motion? Do you solemnly affirm that you will conform yourself to the terms and consequences of this court of rightfully employing the law within the scope of the Constitution of the United States? I do. Congratulations. Thank you. Thank you, and welcome to the Bar. We shall proceed with the order of proceedings. The first argument case this morning is number 14, 1814, Swift Train Company against the United States. Mr. Perry. Thank you. Good morning, Your Honors. Besides the issue of the court's role in this case, which is something the Commission has raised, the major question in this case is does the bi-reasonal language in the anti-dumping and countervailing duty law impose a requirement of... Mr. Perry, when you say in your briefing that the Court of International Trade, quote, on its own motion, in an apparent effort to affirm the Commission's determination and so on, where's that motion in the record? Well, what I'm saying about own motion is that basically the Court of International and Judge Musgrave came up with a substantial factor test. We had not briefed it. The ITC had not briefed it. Well, where's the motion? That's what I meant. I'm not saying... I'm using that as a metaphor. There's no real motion, but what I'm saying... Was that a metaphor, too, when you said it was an apparent effort to affirm? Yeah, I think it was. So you're saying the Court was biased. Well, no, no, I'm not trying to say it's biased at all, and please excuse me if that's what I'm trying to get across, but I do believe that the Court tried to pull... The Commission refused to address the Supreme Court cases in this case. The Supreme Court cases are very important. The Barrage case is extremely important. In that case, Justice Scalia, for unanimous Supreme Court said, by reason of standards, statutes require a contraption. You're moving away from my question. But I'm trying to... The point I'm trying to get at is your question was, did he... I believe he did it on his own. You use the language of an apparent effort to affirm. Well, he basically was trying to rationalize or deal with the situation where the Commission refused to respond to many of the arguments regarding the Supreme Court cases. I mean, there were actually no citations to Price Waterhouse in the record. I mean, this is the whole point. In the Mitel case, the Court of Appeals to the Federal Circuit said you've got to do a but-for test to determine causality and laid out the whole Price Waterhouse language. But in the Mitel case, we specifically said that there was no precise methodology that had to be followed, and in Price Waterhouse, it's not. The Supreme Court said we find it difficult to believe, because of the simple use of the words because of, that Congress meant that you had to have a detailed analysis of employment motivation. Well, I'm not saying... There are different ways to ask and answer the question, the counterfactual but-for question. But I think that no doubt about it, if you take a look, especially remember, the Barrage case takes place in 2014. That is after the Mitel decision. And it's incredibly important, because basically Scalia is saying, across all these statutes, by reason, the lowest causation standard we can have is but-for cause. A counterfactual but-for cause. What's going on is the changes of the Supreme Court. I mean, it's interesting, because the Court also, even the substantial factor test... We don't even have to look at the substantial factor test, because given our standard of review, we're not bound by anything the Court of International Trade said. We find it to be very useful and often very thoughtful, but if the Court of International Trade said something that was different than the Commission said, we are to review what the Commission's decision is, correct? Yes, of course. But I also believe... The substantial factor is not what the Commission said. I agree. So we should look at what the Commission said. I agree. But I think the other side of this is, the Court has to be cognizant of what's going on in the Supreme Court. Of course. And I believe that... We do try. I understand that. But what I'm trying to say is that if you take a look at something like the Barrage case, it basically says, across the by reason of statutes, we have to use a but-for test. That's the lowest. Mr. Perry, would you point me to exactly where in Swift Train 2 the CIT introduces the substantial factor test? As the substantial factor analysis to support its observations. I don't have it right here. Off the top of my head in where they said it. But the point I'm trying to do is... You don't have it right there because they didn't say it. They did say substantial factor. They did not introduce the substantial factor test. They provided a detailed interplay between but-for causation and a substantial factor analysis. Right. It's very interesting because we would also suggest you look at the Supreme Court page 890 in the Barrage decision. Are you saying that Barrage is overruling Price Waterhouse without actually saying so? No. I think in the Price Waterhouse case what Justice Scalia said in a footnote and you can find it and I can give you that one. You can see Justice at footnote 4 when he was speaking for a unanimous court the three opinions of the six justices in that case, Price Waterhouse did not eliminate the but-for-cause requirement imposed by the because of statutory language. The question was a shift in burden question not a decision to eliminate but-for-cause requirement imposed by the because of language in the statute. That's a quote. What are you supposed to make of a footnote if that's different than the actual holding of the case? The holding of the case was basically a shift. That's what I'm trying to get at. The Barrage case comes after Price Waterhouse. 2014. A unanimous court holding. Basically you can say that wasn't because they list a whole string of statutes with my reason of language in them. It's very interesting because one of the issues which is a core belief that I thought was a contributing cause standard and Justice Scalia references this. You can basically say Excuse me. Specifically addressed in See at 891 of the Barrage case where Justice Scalia says taken literally, if the government's contributing cause test would treat as a cause in fact every act of omission that makes a positive incremental contribution however small to a particular result. What we're doing, you're taking a bunch of cases that are not in the trade context and that have a full background of common law and you're trying to tell us that that is supposed to be an overlay on our statutory interpretation of the trade case. I believe that is true because the changes in statutory interpretation by Justice Scalia and other people in the Supreme Court. Okay, so we're supposed to say that Justice Scalia who was in dissent in Pricewaterhouse issued a later decision in a different time. I don't know if he was in dissent in Pricewaterhouse. Yes, he was in dissent. The footnote that you quoted was from the dissent in Pricewaterhouse, not from the majority. Putting that aside. No, the footnote I quoted was from the Barrage decision where he was writing for a unanimous court. But the point is they don't say they're overruling Pricewaterhouse. Yes, I know that. And in Pricewaterhouse they were talking about statutory construction of words because of. Correct? That's true. So are we supposed to ignore how the Supreme Court did a statutory construction of that kind of language? I don't think you ignore it, but the whole point is he's listing a whole series of cases. He's basically saying that because of the bi-reasonable language within the statutes of all these different statutes, the Supreme Court is holding that they must do a minimal counterfactual but-for test. I mean, disagree with me? I mean, you can take a look at the Barrage case, but if you read it, that's what I'm reading. The point is, the more I started to study the Supreme Court cases, the more issues I found. I mean, go back to what Kennedy said in Pricewaterhouse. I mean, I think it's very important because he says, what we term but-for cause is the least rigorous standard that is consistent with the approach to causation our precedents describe. And it's not just court or criminal or anything, it's across a whole panoply of different statutes. That's what I'm trying to get across here. And I thought, and maybe I'm wrong, but that in Mitel, probably I am, that in the Mitel case... Those are a panoply of different theories of the law, Mr. Craig, and you know that perfectly well. No, we're dealing with specific statutory language with an SAA and with direct interpretation by this court, which has never been impacted or overruled by the Supreme Court. No case has ever gone up to the Supreme Court. But the whole point I'm saying here is that I think it was believed in Mitel when they required the but-for test, they said it's not inconsistent with the SAA. The Statements of Administrative Action. I believe that maybe I'm wrong here, again, but I think the court is basically... You've got legislative history on one side, what the Commission is doing on one side, but you've also got the situation where there are changes going on in the Supreme Court. And there's tremendous emphasis now on statutory interpretation. And do the words mean what they say? And what basically Scalia is saying, when you do a by reason of, you're putting it into a statute and it has a meaning, and that meaning is basically but-for cause. That's the least causation standard we have. Now, what the Commission is saying, we don't care. We're going to do our own thing. Discretion is left to us, and you're to affirm us, the court is to affirm us on substantial evidence grounds. I don't believe that's true. I believe that the court is the one who eventually sets the statutory standard here. And so that's my point here. Okay, let's hear from the government and we have your final time to wrap it up. Mr. Fishberg. Thank you, Your Honor. May it please the court, my name is David Fishberg on behalf of the US International Trade Commission. I think... Let's take you back to the language of the trade statute. Because there's a long line of cases from the Federal Circuit in which the Federal Circuit has told us the exact causation analysis we should perform here. Unlike what Mr. Perry was saying, we don't have unfettered discretion. There have been a number of cases interpreting our trade statute in which this court has told us specifically that we need to show that in reviewing an affirmative determination for substantial evidence, this court requires evidence on the record to show that the harm occurred by reason of less-than-fair-value imports, not by reason of a minimal or tangential contribution to material harm caused by less-than-fair-value goods. That's the exact analysis we did in this case. Well, what's your response to your friend on the other side when he says well that might be all well and good, but all of those cases essentially have been overturned or at least the Supreme Court has now told us that they're wrong? Judge O'Malley, I would agree with your skepticism during the affirmative presentation. Burrage was a criminal law case, so there's a totally different standard of review there. We don't have a beyond-a-reasonable-doubt standard. I think in that very case, Justice Ginsburg said she may have found differently, but she had to deal with the rules of lenity. Those are concepts that are not at all involved in our trade statute. So what's the source of your definition of by reason of? Well, the language of the statute, the legislative history of our statute as well as this court's interpretation going back to Nippon, Gerald Meadows, Brass, Mittal, this court has a long history of telling us exactly the type of analysis we should perform. The statute tells us, it doesn't leave us in a vacuum. It says in order to meet the causation standard, the commission shall consider volume, price effects and impact of subject imports. In this case, we did exactly that. We go on, based on the guidance of this court and the statute to ensure that we're not attributing injury from other factors that might be occurring in the marketplace to the subject imports. So in this case, we examine such issues as demand, substitute products, non-subject imports. And there are various ways of doing that. As this court has said, we're not going to impose a specific methodology on us but, of course, this court's going to review our findings based on substantial evidence. So if we get it wrong, if we say there's a trend occurring, if we don't adequately explain how we are not attributing injury from these other factors to the subject imports. Do you agree with what I understand is Mr. Perry's concern that other factors are not to be considered? By reason of analysis?  This court has told us you are to consider other factors because in order for us to ensure that we're meeting the causation threshold, that subject imports are more than just a minimal or tangential cause, not only do we look affirmatively at the actual effects that the subject imports are having, we also have to look at what else is going on in the marketplace. So there might be other things that are going on, demand issues, non-subject imports, that might make what we thought was a material cause of the harm immaterial. So that's why we do what's called our non-attribution analysis where we need to look at those factors and ensure that we're not attributing injury from those factors to the subject imports. And that's exactly what the SAA told us to do. Would you agree with me that the core difference between you and your opposing counsel is that he believes you must do a counterfactual analysis and you believe you may do a counterfactual analysis? That's true. I think there's a big difference in terms of what's required under the statute and what is permissive under the statute. There are certain basic requirements that the statute spells out. We must consider volume. We must consider price effects. We must consider impact. We must ensure we're not attributing injury from other factors to the subject imports. Nowhere does it say we must conduct a counterfactual. In fact, I would suggest it doesn't really make much sense because we actually have a record that we can look at. We can look at actual evidence on the record as opposed to conducting a counterfactual where you get into the realm of hypotheticals, which is where this court has warned us you get into some trouble when you start ignoring the empirical data. In our five-year reviews where we're looking forward and where there's an order already in place, in the SAA, Congress told us specifically, there you must conduct a counterfactual review. So where Congress has wanted the commission to conduct a counterfactual review, it has told us to do it. In a five-year review, it makes sense because you have an order in place that is already affecting the market, so there's an artificiality to the market. We don't know why subject imports may have left the market, so therefore you have to counter the factual of an order being in place. In an original investigation, there is no order in place. We get to look at a pristine period of investigation where we can look at what actually occurred in the market during that period. Well, if you consider our non-attribution account, where we're looking exclusively at other factors, then I would say, yes, but do we do the one that I think Mr. Perry is suggesting where we have to go back and ignore the reality of what actually transpired in the market? I would say no. That's all I have for your honors. If you have any other questions, I'd be happy to respond. Just other than your statement that Barrage is a criminal overlay, you don't even respond in your referees by citing to it at all, even though he cites to it several times in his blue brief. Do you have any other basis for distinguishing? Well, again, I think the courts in the litany of cases that appellants have cited in the tort, criminal law context, I think the courts have been very clear to say that those cases stand for the proposition that you need to look at the context of the statute that you are examining. So to try to impose requirements from statutory interpretation dealing with very different statutes. In fact, as you pointed out, Pricewaterhouse wasn't even a but-for case. So the court has gone back and forth in terms of what that language actually means. To try to impose requirements when you have our very statute telling us what we should be doing, I think is incorrect. That would be our response. There is at least some language in Barrage where it says that this kind of use of language of because of or on account of or it goes through a whole series of various statutory phrases and that absence of congressional statements that substantial factor would be enough, we don't accept that proposition. I mean, I guess taking a step back, I would think that we, the commission, although it doesn't explicitly use the language but-for, I think by conducting the type of analysis that we conduct, if we do it properly, and again that's for this court to determine, by looking at the actual effects of the subject imports and then not attributing the effects of other factors to the subject imports, I believe we've satisfied the principle of a but-for causation analysis where again we're showing that the domestic industry would not be in the same exact shape with or without subject imports in the market by actually looking at the record evidence of what actually occurred during the period, we are explaining how these subject imports are having an effect on the marketplace. Again, for instance, in this case, there were significant volumes of subject imports that undersold the domestic industry, there were significant market share shifts that were undertaken by the subject imports. I mean, it's all there in our analysis and this court's responsibility is to review that analysis and ensure that what we are citing to you is supported by substantial evidence on the record. So again, I think that the commission satisfies the principle of but-for if it does a correct analysis of its statutory factors as well as ensuring it's not attributing injury from other factors to those subject imports. Thank you. Thank you very much. Mr. Perry. I think, Mr. Perry, that raises an interesting question and that is the commission came up with pretty muscular findings in looking at the impact on domestics and you're sort of dealing with theory but not with facts. So hit those today. I mean, we set forth the first the issue here is causation in fact. I mean, that's what we're talking about. I mean, one of the problems let me just finish the point. You're talking about contributing causes and not weighing causes. But what Scalia is doing is trying to get into the statutory language and clarify that it has to be a legal cause of injury. We put forward a scenario. Basically, you had the problem during 2008 to 2011-2012, the period of investigation of the largest housing crash in history. If you look from 2009 forward, what do you see? You say increased imports, increased U.S. shipments, profitability kind of going up in the U.S. industry, demand static or flat, and basically the prices themselves are not going down. I mean, this raises the issue. The commission's analysis was very careful to analyze the difference between the two industries and said, okay, yes, everybody went down, but there was a difference in percentage in terms of the domestic industry versus the subject imports. And then when things got better, the domestic industry didn't get better at the same percentage rate as the subject imports. And that's a fair comparison, is it not? Well, I would disagree. I think that basically your prices are flat during this period. I mean, you're still caught up on this, is that there's so much trade speak going on, you can't cut through and look at the statutory language. We have to go down back to the counterfactual aspect. Trade speak, contributing cause of injury, temporal cause, this one, that one. I mean, that's the point. No, but the counterfactual analysis is based in what might tell on the statement by basically Justice Kennedy. That's counterfactual. Assume the factor is present, assume the factor is absent. What is the impact on the industry? We're also looking basically at, we've got to come up with a scenario. The Commission has different... Isn't that what the Commission ultimately did in this last step? No, they didn't do it. And that's the point. Because you keep avoiding the actual facts. You want to just argue theory. Let's talk about the fact of what the Commission actually did. Okay, but the Commission actually did was basically say, let us look at the statutory criteria, imports are up, the industry is hurting, we're going to ignore the fact that it's rising, prices, we'll look at this one piece of price, the hand-strapped wood flooring over here, and we'll say that basically... Where did they say they were going to ignore that? Well, I believe that there's all facts on the record. We did a price index to show that when you looked at all the prices across the entire period, there was more overselling than underselling. So the Commission focused on one price itself. But my whole point again, once you do the counterfactual, once you follow the statutory standards, this but-for-cause is required by the reason. It is not a methodology. It is a statutory standard. And you can use the statutory questions. The question must be asked and answered. Now, you could have different methodologies for answering that question, but this court can't review it until it knows that the question has been asked and answered. That's the point I'm trying to make here. Okay. Thank you. Thank you, Mr. Brown. Thank you both.